REAVLEY, Circuit Judge,
dissenting:
The majority have chosen their own meaning of the 1993 order of the bankruptcy court by leaving future asbestos claimants to tort actions against Gypsum without recourse to the claims resolution facility of the bankruptcy order. I would follow the bankruptcy court’s own construction of its order and avoid adding to the delay and lawyer fees for asbestos victims, the ongoing judicial contribution to the asbestos debacle.[1] I dissent.
The 1993 order confirming the plan provided in section 9(b) that New-NGC “shall not be subject to the commencement or continuation of litigation by any person on or on account of Unknown Asbestos Disease Claims pending exhaustion of the remedy or remedies provided by the NGC Asbestos Settlement Fund,” i.e., the fund administered by the Trust. Again, in the “channeling order” that is section 10(b) of the confirmation order, all persons holding an unknown asbestos claim are enjoined from suit against New-NGC “pending exhaustion of the remedies of the” Trust settlement fund. If the court was not directing that, if necessary, New-NGC assets followed Trust assets in the settlement facility, it was lifting its injunction and allowing an entirely new track for the claimants who waited for the second track to begin. While lawyers for the claimants could not count on better recoveries when the track changed, because New-NGC had the option of adding assets to the Trust *494 Fund, the lawyer fees could be larger. This able bankruptcy judge would have recognized the vice of that scheme and would have avoided it.
When the financial creditors, who were to own New-NGC, objected to the court’s channeling order for the reason that it “subordinates the majority of the claims currently held by NGC’s bond and trade creditors to ¿n undetermined amount of asbestos liability,” the court rejected this objection. Over the protest of Gypsum creditors who would own the New-NGC the bankruptcy court refused to protect it from future unknown claims but, as if the bankruptcy court had not decided the matter, this majority opinion holds that the bankruptcy court did not “transfer liability.” But then the majority relents and restrains the transfer to the more limited “state-law successor liability.”
Then there is the provision of the order at section 9(c) that expressly bars punitive damages by unknown claimants against New-NGC. The majority opinion dismisses this on the ground that the bankruptcy court had no authority to limit those damage awards because they were not “claims” within the meaning of the Bankruptcy Code. That is a curious response to the obvious point that the bankruptcy court is assuming the same liability of New-NGC in the channeling facility, rather than contemplating “state-law” litigation.
The bankruptcy court, in ruling in the pending adversary action, said: “With all due respect to the learned and considered arguments of counsel, the only reading that gives meaning to these findings of fact and conclusions of law are that this plan as confirmed by this court contemplated new NGC liability for claims not paid by the Trust and not otherwise discharged.” The district court followed the law and gave deference to the bankruptcy court’s interpretation of its own confirmation order. See Farmhand, Inc. v. Anel Eng’g Indus., Inc.[2] (“We see no basis for substituting our judgment for that of the district judge in interpreting his own order.”). The bankruptcy judge will find demoralizing the majority conclusions that he “never intended” or “wanted to impose” a channeling liability after exhaustion of the Trust assets, or that the judge would reach this strange “state-law successor liability” and then forget that he had so ruled. Actually, it is incredible to believe that the bankruptcy court would create this new operating company with debtor assets, after holding that it had no authority to extinguish unknown asbestos claims of the debtor, and then leave it to state law governing successor liability to resolve the future asbestos liability of its mutant creation, without leaving so much as a footnote in the controlling documents suggesting such an intent. This appellate court should reject the incredible and stay with the judgment of the bankruptcy court.

. For example, see Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

. 693 F.2d 1140, 1146 (5th Cir.1982) (quoting SEC v. Sloan, 535 F.2d 679, 681 (2d Cir.1976)).